## In re Burch.

(No. 3571—Decided October 13, 1943.)

*Mr. Clyde F. Beery, Mr. Robert Guinther* and *Mr. C. G. Roetzel,* for appellant, Frank B. Burch.

*Mr. Carl M. Myers, Mr. Clarence Becker* and *Mr. Kenneth B. Baker,* prosecuting committee, for appellee.

STEVENS, P. J. By an amended statement of charges

prepared and filed by a committee of the bar, Frank B. Burch was charged as follows:

"Now come * * *, and do hereby submit, file and charge against said Frank B. Burch the following matters:

"1. That Frank B. Burch has been convicted of a crime involving moral turpitude as follows:

"On October 14, 1941, in the District Court of the United States for the District of Columbia, said Frank B. Burch entered an unqualified plea of guilty to an indictment (a copy of such indictment being attached hereto and made a part hereof, marked Exhibit A) charging him with knowingly and wilfully committing a felony against the United States in that he acted as public relations counsel, agent, representative, and attorney for, and received compensation from, the government of the German Reich, without filing the registration statement required by the Act of August 7, 1939.

"2. That Frank B. Burch has been guilty of misconduct and unprofessional conduct in office involving moral turpitude as follows:

"In the period from January 1, 1940, to July 15, 1941, or thereabouts, as agent and attorney for the government of the German Reich, he accepted funds from a consul of said government for the purpose of promoting the political interests of said government by distributing and disseminating certain pamphlets, books and other literature clandestinely, and in a manner, designed to conceal from the recipients thereof, and all other persons, his true identity and the identity of the said government, which acts, and others, are more specifically set forth in Exhibit A attached hereto and made a part hereof. Said acts and conduct, performed in behalf of the government of the German Reich, were inimical and in opposition to the interests of the United States of America and in particular the

promotion of the defense of the United States of America.

"3. That Frank B. Burch has been guilty of misconduct and unprofessional conduct in office involving moral turpitude, as follows:

"That in an investigation of his activities by the federal grand jury, held at Washington, D. C., in September, 1941, the said Frank B. Burch, when called as a witness before said grand jury, obstructed justice, and failed to assist the government officials in eliciting the truth in the matter then under consideration by the grand jury—(a) by withholding pertinent facts within his knowledge until confronted by written or documentary evidence of such facts; (b) by failing to produce exhibits called for by subpoena *duces tecum* issued by the United States District Court for the District of Columbia, which exhibits were within his possession, and destroying correspondence; (c) by denying the nature and extent of his correspondence with Dr. Kapp until confronted with the letters revealing such correspondence; (d) by denying the preparation and forwarding of mailing lists to Dr. Kapp until confronted by the letters showing that he had done so.

"Said [committee members] pray this honorable court for an order fixing the time for hearing the matters herein complained of, and upon final hearing thereof that an order be entered suspending or removing the said Frank B. Burch as an attorney at law from all courts of record of the state of Ohio, or reprimanding said Frank B. Burch, all as provided by Section 1707 of the General Code of the state of Ohio, and for such other and further orders herein as the court may deem advisable in the premises."

These charges, it will be observed, were in part predicated upon Burch's conviction, in the United States District Court for the District of Columbia, of wilful failure to file the registration statement re-

quired by the Act of Congress of June 8, 1938, as amended August 7, 1939, pertaining to registration where one acts as agent of a foreign principal; and in part upon alleged failure, when appearing before the federal grand jury, to disclose facts, to produce certain exhibits, correspondence and lists alleged to have been required to be produced by subpoena *duces tecum*, and by destroying certain correspondence.

It seems fair to state, in view of the objections made by counsel for Burch at the outset of the hearing, that the charges made by the committee were ordered to be filed by the same jurists who sat in judgment upon the accused.

Disbarment proceedings, under the Ohio law, are governed by Section 1707, General Code, which is in part as follows:

"The Supreme Court, Court of Appeals or Court of Common Pleas may suspend or remove an attorney at law [from office] or may give private or public reprimand to him as the nature of the offense may warrant, for misconduct or unprofessional conduct in office involving moral turpitude, or for conviction of a crime involving moral turpitude. * * *"

After a very full hearing before a court composed of six Common Pleas judges, a judgment of disbarment was entered against Burch.

It is from that judgment that the instant appeal on questions of law has been taken.

We may here state that the entire record, including the exhibits, has been read by the court, and from that reading, and independent study, certain conclusions of the court have emerged with crystal clarity.

This proceeding naturally divides itself into two branches: First, that dealing with the defendant's conviction of a crime alleged to involve moral turpitude; and second, that involving alleged misconduct or un-

professional conduct in office, involving moral turpitude.

As to the first branch: Did the offense to which Burch pleaded guilty involve moral turpitude?

The Act of Congress (Section 2 of the Act of June 8, 1938, as amended August 7, 1939, Section 612, Title 22, of the Federal Code) which requires the filing of a registration statement and specifies what such statement shall contain, does not indicate the purpose of the act, nor does a reading of the act in its entirety disclose in terms the end sought to be attained by its enactment. The court is therefore at liberty to attach to the wording of the act such reasonable purpose as its contents and the circumstances existing at the time of its enactment seem to indicate.

To us it seems apparent that the act is political in character, and regulatory in purpose.

The failure of Burch to register as the agent of a foreign principal, which he concededly was, did not contravene any accepted code of morals, nor did it manifest inherent baseness or vileness of principle, or depravity. It was merely a failure to comply with a political regulatory enactment, which in no sense dealt with questions of morality.

Webster's New International Dictionary (2 Ed.), defines "turpitude" as "Inherent baseness or vileness of principle, words, or actions; depravity." "Moral," used in such connection, is defined as "4. Pertaining to character, conduct, intentions, social relations, etc." And the legal term "moral turpitude" is defined as "The quality of a crime involving grave infringement of the moral sentiment of the community as distinguished from statutory *mala prohibita*." These are precisely the definitions which have been used by the courts in defining "moral turpitude."

The definition given in 2 Bouvier's Law Dictionary, Rawle's Third Revision, page 2247, is as follows:

"Moral Turpitude. An act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

The moral turpitude that may be involved in the commission of a crime does not exist merely because there has been a crime committed—a mere violation of law—on the theory that it is immoral to violate any law. The use of the term "moral turpitude" in our statute providing for disbarment (Section 1707, General Code) clearly contemplates something more than conviction of a crime; otherwise the use of the words would be the introduction of mere surplusage into the statute.

If a crime is one involving moral turpitude, it is because the act denounced by the statute offends the generally accepted moral code of mankind.

In a disbarment proceeding based upon conviction of a crime, where the nature of the crime is not such as plainly and unquestionably offends the generally accepted moral code, evidence as to all the circumstances of the crime, including the actor's knowledge and intention, is admissible, even though he has pleaded guilty; and, likewise, evidence is admissible as to the circumstances under which such plea was entered.

The record in this case covers very fully all of the activities of Burch in connection with the transactions involved in his prosecution, and we are unable to comprehend wherein his failure to register as the agent of a foreign principal contravened any mandate of a moral code with which any of the members of this court are familiar.

The charge that Burch acted "with the purpose of promoting the political interests of the German Reich" is just not true; on the contrary, the evidence conclu-

sively establishes that he was trying to promote the interests of the United States and was seeking the same end as millions of other honest and patriotic citizens of this country.

No law forbade what he did. The only wrong charged against him was, that by reason of his relations with the German consul, he should have registered. Had he done that, no act of his was of such character as could not have been lawfully performed by any American citizen.

Such failure to register had in it no element of moral turpitude.

It is our unanimous conclusion that the crime of which he stands convicted, was not one involving moral turpitude, and hence furnishes no basis for disbarment; and in finding that said crime was ''a felony which in all the circumstances involved moral turpitude,'' the Court of Common Pleas erred to the prejudice of the appellant.

As to the second branch of the charge: Was the conduct and testimony of Burch in his appearance before the federal grand jury ''misconduct or unprofessional conduct *in office* involving moral turpitude''?

We might here state that, after having read the testimony taken before the federal grand jury, the members of this court are all of the belief that that proceeding more nearly approached the character of a political inquisition, than an orderly investigation before an examining body. Almost no phase of the accused's personal, professional or political activities or life was immune from searching, sarcastic and impertinent inquiry by the government attorneys, although in the investigation the only pertinent question was, Did Burch act as the agent of a foreign principal?—a fact which he readily admitted.

If the record which the Supreme Court of the United States had before it in the case of *Vierick* v. *United*

*States,* 318 U. S., 236, 87 L. Ed., 529, 63 S. Ct., 561 (which, as we understand, was prosecuted by one of the attorneys who examined Burch), showed such conduct on the part of the government attorney as appears in the transcript before us, then we can well understand the merited rebuke to said attorney contained in the opinion of Mr. Chief Justice Stone.

To warrant disbarment of an attorney under our statute, the evidence must show that his misconduct or unprofessional conduct was "in office"; in other words, his misfeasance or malfeasance must have been in his capacity as an attorney.

Was Burch acting professionally as an attorney when he appeared before the federal grand jury as a defendant in response to a subpoena?

W,e believe not. His appearance there was under coercive process, he represented no one but himself, and in so doing he accomplished no outstanding performance in preserving rights guaranteed to him by the federal Constitution.

In times of stress and strong emotion engendered by the war and its inevitable consequences, it is of primary importance that the scales of justice remain in balance, unweighted by other than the calm, dispassionate judgment of the courts, reached after proper consideration of the law and the evidence, and uninfluenced by extraneous matters.

It is to the courts that the people must look for the preservation of those rights which are constitutionally theirs, provided for them by farsighted forebears.

As we view this record, there was nothing which Burch did, which any high-principled, patriotic American might not lawfully have done, except his failure to register as the agent of a foreign principal. Had he so registered, no act of his would have come within the proscription of the law, nor would it have contravened the moral code.

As to contradictory statements, we are astounded that, in the face of the type of inquiry to which he was subjected, he told so thoroughly consistent a story. Minor and inconsequential inconsistencies there were, to be sure, but in the main, and as to important points, there was no material variance.

We conclude that, on no charge made against Burch in this disbarment proceeding, did the evidence warrant a finding of guilt.

The judgment is reversed, and the charges are ordered dismissed.

*Judgment reversed.*

WASHBURN and DOYLE, JJ., concur.

WASHBURN, J., concurring. I fully concur in the foregoing opinion, but it does not seem to be improper for me to express some additional personal observations, as follows:

The pamphlets circulated by Mr. Burch were copies of speeches and documents which were being circulated by many genuinely patriotic organizations of American citizens. In most part the pamphlets consisted of copies of speeches by senators and other public men, articles published and freely circulated in American-published magazines, and printed matter taken from the Congressional Record; they contained no matter that any citizen of the United States was not privileged to express and advocate, and the articles were designed to keep us from entering the war. At that time we were not at war, and a citizen who did not want the United States to get into war was not a traitor.

Mr. Burch unquestionably had a constitutional right to try to influence public sentiment against war, and to do each and every thing which the record shows he did do, including, so far as the law was concerned, a

right to accept money from the German consul to assist in furthering his own efforts to keep us out of war. I do not approve of his exercising this latter right, but the propriety of doing so is a matter of opinion and is not a violation of law nor a matter for which he could be called to account in a disbarment proceeding.

What Mr. Burch did made him technically an agent of the German consul, and his failure to register was a violation of the law requiring him to do so. Notwithstanding his plea of guilty, he had a perfect right, in a disbarment proceeding, to establish, if he could, that he did not know that there was any such law, and, if he succeeded in establishing that fact, there was no moral turpitude in his act which would make him subject to disbarment for the violation of such law; and in my judgment he fully established his nonknowledge of the existence of that law, and that the circumstances under which his plea of guilty was made, which are fully shown by the record, did not deprive him of the benefit of such nonknowledge in determining the existence or nonexistence of moral turpitude in the disbarment proceeding.

DOYLE, J., concurring. The offense to which Mr. Burch pleaded guilty is generally known as a political crime. It is *malum prohibitum* and not *malum in se*. It cannot under any fair legal construction come within the term "moral turpitude" as that term is used in the disbarment statute.

The activities of the appellant which formed the basis of the disbarment proceedings occurred before this country's entrance into the war, and while the United States was at legal peace with the nations of the world.

It must be at all times remembered that the right of free speech is a guarantee embodied in the Constitution of the United States. And while this writer

vigorously dissents from some of Mr. Burch's political views and activities as revealed by the record, nevertheless his right to express his views must be respected by the courts so long as his activities do not contravene the laws of the state and nation. This record does not reveal any such contravention.